## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANDREY KRYLUK, individually, and on behalf of all others similarly situated, | : : | |
| | : | CIVIL ACTION |
| Plaintiff(s), | : | |
| | : | |
| v. | : | |
| | : | NO.   14-3198 |
| NORTHLAND GROUP, INC, and DOES 1 through 10, inclusive, | : : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM

BUCKWALTER, S. J.                                    November 24, 2014


Currently pending before the Court is the Motion to Dismiss Plaintiff's Amended Complaint by Defendant Northland Group, Inc. ("Northland") and a Motion for Leave to File a Second Amended Complaint by Plaintiff Andrey Kryluk.  For the following reasons, both Motions are granted.

## I.      FACTUAL BACKGROUND

According to the facts set forth in the Amended Complaint, Plaintiff is a college student who has maintained the same permanent residence address for more than a decade.  (Am. Compl. ¶ 18.)  In March 2014, Plaintiff received a letter from Defendant regarding Plaintiff's alleged debt of $486.11.  (Id. ¶ 19.)  Although dated February 28, 2014, the letter was not actually mailed until March 5, 2014.  (Id. ¶ 20.)  The letter was a pre-printed form, designated by the sequence "F19943497-02/028x1N" that appeared next to Plaintiff's name in the top third of the document,

as well as the sequence "M1N-1N P82/0303_3" that appeared in the bottom right corner of the document.  (Id. ¶ 21.)  The letter identified "CITIBANK, N.A." as the "Creditor" and disclosed that the original account number of the alleged obligation ended with "9700."  (Id. ¶ 22.)  The body of the letter stated in full:

> The above referenced CITIBANK, N.A. account has been assigned to Northland Group, Inc. for collection.  As of the date of this letter, you owe $486.11.  Because of interest that may vary from day to day, the amount due on the day you pay may be greater.  Hence, if you pay the amount shown above, an adjustment may be necessary after we receive your check, in which event we will inform you before depositing the check for collection.  For further information, write the undersigned or call 866-578-1748 ext. 3831.
>
> CITIBANK, N.A. is willing to negotiate a settlement for less than the full balance owed.  Contact Northland Group, Inc. to discuss a settlement or to make payment arrangements.  This offer does not affect your rights set forth below.  Make check payable to CITI.
>
> Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid.  If you notify this office in writing within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will obtain verification of the debt or obtain a copy of the judgment and mail you a copy of such judgment or verification.  If you request this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

(Am. Compl., Ex. B.)

In April 2014, Plaintiff received another letter from Defendant regarding the same debt.  (Id. ¶ 23.)  The letter was also a pre-printed form, designated by the sequence "F199443497-04/0433" that appeared next to Plaintiff's name in the top third of the document, as well as the sequence "M33-33 P7436/0407U4" in the bottom right corner of the document.  (Id. ¶ 24.)  Like the February letter, the April identified "CITIBANK, N.A." as the creditor and disclosed that the original account number of the alleged obligation ended with "9700."  Although dated April 4,

2

2014, the letter was not actually mailed until April 9, 2014.  (<u>Id.</u> ¶ 26.)  The letter contained the

following text in the body:

IT'S A NEW YEAR WITH NEW OPPORTUNITIES!

Your Settlement Offer $243.06

> In view of tax season, our client, CITIBANK, N.A., will allow you to settle your
> account for $243.06 in 3 payments starting on 04/25/14.  We are not obligated to
> renew this offer.  The payments can be no more than 30 days apart.  Once all three
> payments have been paid to our office on time, a letter will be sent confirming the
> above reference account has been resolved.  Please send in the payments along with
> a payment stub to the address below.  Make check payable to Citi.

(<u>Id.</u> ¶ 27.)  Plaintiff asserts that, upon information and belief, the offer was not predicated on "tax

season" and that this language was used to create a false sense of urgency that this offer would not

be renewed.  (<u>Id.</u> ¶ 30.)  Moreover, Plaintiff avers that the letter created an additional false sense

of urgency by: (1) stating that the first settlement payment must be received by April 2, 2014 for

the offer to be accepted (<u>id.</u> ¶ 31); (2) characterizing the offer as time-sensitive in nature (<u>id.</u> ¶ 32);

(3) falsely stating that subsequent payments "can be no more than 30 days apart" (<u>id.</u> ¶ 34); (4)

stating that the offer was contingent upon the subsequent payments being made within 30 days of

the previous payment (<u>id.</u> ¶ 35); and mailing the letter after the date listed on the letter.  (<u>Id.</u> ¶¶

42–43.)

Plaintiff alleges that the deadline for the initial payment, as well as the other requirements

, were entirely fictitious and that Defendant had the authority to settle Plaintiff's account even if

Plaintiff remitted payment after April 25, 2014, or if Plaintiff's second payment was received

thirty-five days after the initial payment.  (<u>Id.</u> ¶ 38.)  Plaintiff asserts, upon information and belief,

that the offer described in the letter of April 4, 2014 is contained in similar letters remitted to

3

consumers throughout the United States and, specifically, the Commonwealth of Pennsylvania. (Id. ¶ 39.)

Plaintiff initiated the current putative class action on June 5, 2014, and filed an Amended Complaint on August 15, 2014.  Plaintiff alleges two counts for relief pursuant to the Fair Debt Collection Practices Act ("FDCPA"), claiming that Defendant:  (a) used false, deceptive, and misleading representations or means in connection with the collection of a debt, 15 U.S.C. § 1692e, and (b) used unfair or unconscionable means to collect or attempt to collect any debt, 15 U.S.C. § 1692f.  On August 29, 2014, Defendant filed the current Motion to Dismiss.  Plaintiff responded on September 5, 2014, and Defendant filed a Reply Brief on September 19, 2014.  In addition, on September 5, 2014, Plaintiff filed a Motion for Leave to File a Second Amended Complaint, to which Defendant responded on September 19, 2014.  Both Motions are now ripe for judicial review.

## II.    MOTION TO DISMISS

### A.    Standard of Review

Under Rule 12(b)(6), a defendant bears the burden of demonstrating that the plaintiff has not stated a claim upon which relief can be granted.  Fed. R. Civ. P.12(b)(6); see also Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005).  In Bell Atlantic Corporation v. Twombly, 550 U.S. 544 (2007), the United States Supreme Court recognized that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Id. at 555.  Following these basic dictates, the Supreme Court, in Ashcroft v. Iqbal, 556 U.S. 662 (2009), subsequently defined a two-pronged approach to a court's review of a motion to dismiss.  "First, the tenet that a

court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id. at 678.  Thus, although "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."  Id. at 678–79.

Second, the Supreme Court emphasized that "only a complaint that states a plausible claim for relief survives a motion to dismiss."  Id. at 679. "Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Id.  A complaint does not show an entitlement to relief when the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.  Id.; see also Phillips v. Cnty. of Allegheny, 515 F.3d 224, 232–34 (3d Cir. 2008) (holding that: (1) factual allegations of complaint must provide notice to defendant; (2) complaint must allege facts suggestive of the proscribed conduct; and (3) the complaint's "'factual allegations must be enough to raise a right to relief above the speculative level.'" (quoting Twombly, 550 U.S. at 555)).

Notwithstanding these new dictates, the basic tenets of the Rule 12(b)(6) standard of review have remained static.  Spence v. Brownsville Area Sch. Dist., No. Civ.A.08-626, 2008 WL 2779079, at *2 (W.D. Pa. July 15, 2008).  The general rules of pleading still require only a short and plain statement of the claim showing that the pleader is entitled to relief and need not contain detailed factual allegations.  Phillips, 515 F.3d at 233.  Further, the court must "accept all factual allegations in the complaint as true and view them in the light most favorable to the plaintiff."

5

Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006).  Finally, the court must

"determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled

to relief."  Pinkerton v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002).

### B.      Discussion

Congress enacted the FDCPA "to eliminate abusive debt collection practices which

contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to

invasions of individual privacy."  Wilson v. Quadramed Corp., 225 F.3d 350, 354 (3d Cir. 2000)

(internal quotations omitted).  However, "[a] significant purpose of the Act is not only to

eliminate abusive practices by debt collectors, but 'to insure that those debt collectors who refrain

from using abusive debt collection practices are not competitively disadvantaged.'"  Brown v.

Card Serv. Ctr., 464 F.3d 450, 453 (3d Cir. 2006) (quoting 15 U.S.C. § 1692(e)).

The FDCPA is a remedial statute to be construed broadly so as to effect its purpose.

Brown, 464 F.3d at 453.  15 U.S.C. § 1692e provides, in part, that "[a] debt collector may not use

any false, deceptive, or misleading representation or means in connection with the collection of

any debt."  15 U.S.C. § 1692e.  A communication is deceptive for purposes of the Act if "it can be

reasonably read to have two or more different meanings, one of which is inaccurate."  Rosenau v.

Unifund Corp., 539 F.3d 218, 222 (3d Cir. 2008) (quoting Brown, 464 F.3d at 455).  When

addressing claims under § 1692e, the Act "should be analyzed from the perspective of the 'least

sophisticated debtor.'"  Brown, 464 F.3d at 453 (quoting Quadramed, 225 F.3d at 354).  This is a

lower standard than "'simply examining whether particular language would deceive or mislead a

reasonable debtor' because a communication that would not deceive or mislead a reasonable

debtor might still deceive or mislead the least sophisticated debtor."  Id. at 454 (quoting

6

Quadramed, 225 F.3d at 354).

While the least sophisticated consumer standard will protect even naive consumers, "it also prevents liability for bizarre or idiosyncratic interpretations of collection notices by preserving a quotient of reasonableness and presuming a basic level of understanding and willingness to read with care." Quadramed, 225 F.3d at 354–55 (quotations omitted). The Third Circuit has noted that "[a]lthough established to ease the lot of the naive, the [least sophisticated debtor] standard does not go so far as to provide solace to the willfully blind or non-observant. Even the least sophisticated debtor is bound to read collection notices in their entirety." Campuzano-Burgos v. Midland Credit Mgmt., Inc., 550 F.3d 294, 299 (3d Cir. 2008) (emphasis added) (citing Federal Home Loan Mtg. Corp. v. Lamar, 503 F.3d 504, 510 (6th Cir. 2007)). "Rulings that ignore these rational characteristics of even the least sophisticated debtor and instead rely on unrealistic and fanciful interpretations of collection communications that would not occur to even a reasonable or sophisticated debtor frustrate Congress's intent to 'insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged.'" Id. (quoting 15 U.S.C. § 1692(e)).

The Third Circuit has yet to expressly find the application of the least sophisticated consumer standard to be a matter of law under § 1692e. Nonetheless, other circuits have. See, e.g., Clomon v. Jackson, 988 F.2d 1314, 1318–20 (2d Cir. 1993); Swanson v. Southern Oregon Credit Serv., Inc., 869 F.2d 1222, 1227 (9th Cir. 1988); Jeter v. Credit Bureau, Inc., 760 F.2d 1168, 1174-75 (11th Cir. 1985). Multiple courts in this Circuit have done the same. See Kaymark v. Bank of Am., N.A., 11 F. Supp. 3d 496, 512 (W.D. Pa. 2014); Smith v. Lyons, Doughty & Veldhuius, P.C., No. Civ.A.07-5139, 2008 WL 2885887, at *3 (D.N.J. July 31, 2008);

7

Womack v. Nat'l Action Fin. Servs., No. Civ.A.06-4935, 2007 WL 2155669, at *3 (E.D. Pa. July 25, 2007) (citing Farren v. RJM Acquisition Funding, LLC, No. Civ.A.04-995, 2005 WL 1799413, at *5 (E.D. Pa. July 26, 2005); King v. Arrow Fin. Servs., LLC, No. Civ.A.02-867, 2003 WL 21780973, at *2 (E.D. Pa. July 31, 2003)).  Consistent with this wealth of jurisprudence, this Court agrees that application of the least sophisticated consumer standard to § 1692e is a question of law.

Defendant now argues that its letters did not violate the FDCPA as a matter of law. Plaintiff, on the other hand, asserts that multiple factors make the letters deceptive, including: (1) the use of the term settlement offer; (2) the inclusion of deadlines for making payments; and (3) the delay of three business days between the writing of the settlement offer and its postmark.  The Court addresses each allegation individually.

### 1.   Use of the Term "Settlement Offer"

The Third Circuit has found that "[t]here is nothing improper about making a settlement offer."  Campuzano-Burgos, 550 F.3d at 299 (quoting Evory v. RJM Acquisitions Funding L.L.C., 505 F.3d 769, 775 (7th Cir. 2007)).  "Forbidding them 'would force honest debt collectors seeking a peaceful resolution of the debt to file suit in order to advance efforts to resolve the debt—something that is clearly at odds with the language and purpose of the [Act].'"  Id. (quoting Lewis v. ACB Bus. Servs., Inc., 135 F.3d 389, 399 (6th Cir. 1998)).  The Third Circuit, in Campuzano-Burgos, went on to hold that "[p]ermitting the use of settlement letters may allow resolution of a claim without the 'needless cost and delay of litigation . . . [and] is certainly less coercive and more protective of the interests of the debtor.'"  Id. (quoting Goswami v. Am. Collections Enter., 377 F.3d 488, 496 (5th Cir. 2004)).

8

In his Amended Complaint, Plaintiff asserts that "the use of the term 'settlement offer;' falsely implies that legal proceedings are imminent." (Am. Compl. ¶ 41.)  As controlling jurisprudence makes clear, however, the mere use of the term "settlement offer" is permissible and, indeed, desirable in the course of resolving debts.  Plaintiff identifies nothing in the language of the letter that implies that litigation is imminent or that Defendant intends on pursuing any legal remedies against Plaintiff.  Accordingly, the Court holds that the letter's reference to "settlement offer" is not false, deceptive, or misleading under the least sophisticated debtor standard.

## 2.   <u>Inclusion of Deadlines</u>

Plaintiff next argues that the letter of April 2014 clearly contains a time-sensitive offer, with specific deadlines for receipt of funds, number of payments, and its expiration.  More, specifically, Plaintiff asserts that the letter falsely characterizes the offer as being associated with "tax season," thereby conveying the impression that the offer is time-sensitive; falsely provides that it is only authorized and contingent upon receipt of first payment by April 25, 2014; and falsely creates a sense of urgency by stating that subsequent payments after the initial payment must be made within thirty days of the previous payment.  (Am. Compl. ¶¶ 29–35.)  He goes on to assert that these alleged deadlines were entirely fictitious since Defendant had the authority to settle Plaintiff's account for less than the stated amount at any time, even if Plaintiff remitted payment after April 25, 2014 and even if Plaintiff's second payment was received thirty-five days after the initial payment.  (<u>Id.</u> ¶¶ 36–38.)

In support of his argument, Plaintiff relies on <u>DeGeorge v. Financial Recovery Services, Inc.</u>, No. Civ.A.11-4288, 2012 WL 4473229 (E.D. Pa. Sept. 28, 2012).  In that case, the defendant sent the plaintiff three debt collection letters, which the plaintiff subsequently claimed were

9

violative of the FDCPA.  Id. at *2–3.  The third letter, in particular, stated in capital, bolded font, "INCREDIBLE TAX SEASON DISCOUNT" and then indicated that the plaintiff had to call the defendant to find out the details of the "special discounts."  Id. at *3.  The letter also indicated that the offer was contingent on the defendant's approval and that the offer would "expire 35 days after January 20, 2011," even though no real deadline existed.  Id.  Finally, the letter stated, "WE ARE NOT OBLIGATED TO RENEW THIS OFFER."  Id. at *6.  Relying on an opinion from Judge Posner in the Seventh Circuit, the Honorable James Knoll Gardner from this district court found that the language, "We are not obligated to renew this offer," would not mislead an unsophisticated consumer because "even the unsophisticated consumer will realize that there is a renewal possibility but that it is not assured."  Id. (quoting Evory v. RJM Acquisition Funds, L.L.C., 505 F.3d 769, 775 (7th Cir. 2007) (Posner, J.)).  Nonetheless, Judge Gardner took a different position with respect to the inclusion of a false thirty-five day expiration date.  Id.  In finding that such allegations adequately pled a violation of § 1692e of the FDCPA, the court reasoned:

> The inclusion of a deadline in a settlement offer does not violate the FDCPA. However, in order to act consistently with 1692e, the debt collector "may not be deceitful in the presentation of the settlement offer."  Campuzano, 550 F.3d at 299 (quoting Goswami v. Am. Collections Enter., 377 F.3d 488, 496 (5th Cir. 2004)). Where a debt collection letter contains an offer to settle by a specified date and makes it appear therein that such offer is a "one-time, take-it-or-leave-it offer", when in fact the debt holder is prepared to make other offers after the expiration date, the letter contains a false statement in violation of the FDCPA. . . . A letter that leaves a consumer with such a false impression violates 1692e because an unsophisticated consumer may think that if they don't pay by the deadline, they will have no further chance to settle their debt for less than the full amount.

Id.  Ultimately, the court held that, "whether the least sophisticated consumer would perceive the November 8, 2010 and January 20, 2011 letters as 'one-time, take-it-or-leave-it' offers or as

10

potentially renewable offers, each letter still contained false and misleading information because, as alleged by plaintiff, no deadline existed at all." Id.

Notwithstanding DeGeorge's ruling, the Court disagrees with Plaintiff that the letter at issue is misleading. As has been held by the Seventh Circuit, and accepted in DeGeorge, the statement that "We are not obligated to renew this offer," is appropriate safe harbor language that adequately conveys to an unsophisticated consumer that there is a renewal possibility if the offer is not accepted by the consumer. Thus, the sole question before the Court is whether the presentation of the settlement offer in the letter at issue—by referencing tax season, indicating that the first payment had to be received by April 25, 2014, and stating that subsequent payments were due within thirty days of the previous payment—leaves the consumer with a false impression of a non-existent deadline.

To that end, this case is distinguishable from DeGeorge. In DeGeorge, the language in the letter at issue explicitly stated that the offer would "expire 35 days after January 20, 2011"—language which Judge Gardner deemed to be contradictory to the safe harbor language. Id. In the present case, the letter contained no such explicit language that the offer would expire. Indeed, the letter had no reference to expiration at all. Rather, the letter merely referred to the offer as being given in connection with "tax season," but did not predicate the offer on acceptance during tax season, which was obvious from the fact that the April 25, 2014 date was after the close of "tax season." Moreover, from the perspective of an unsophisticated creditor, the mere inclusion of a deadline by which Plaintiff had to send in payments did not create any false sense of urgency that Plaintiff would forego any opportunity to settle if he missed the deadline. Rather, Defendant was merely making Plaintiff aware that, under the terms of the particular settlement

proposal, the offer was not being held open indefinitely—a practice that does not violate the

FDCPA.

Finally, to the extent DeGeorge's holding can be construed as making the imposition of

certain deadlines in connection with a settlement offer—notwithstanding the inclusion of the safe

harbor language—a violation of the FDCPA, this Court must respectfully disagree with that

holding.[1]  As eloquently stated by Judge Posner:

> It is apparently common for debt collectors to send letters to consumers that say such
> things as (these examples are all taken from the cases before us) "we would like to
> offer you a unique opportunity to satisfy your outstanding debt"—"a settlement of
> 25% OFF of your current balance. SO YOU ONLY PAY $[_____] In ONE
> PAYMENT that must be received no later than 40 days from the date on this letter."
> Or "TIME'S A WASTIN'! . . . Act now and receive 30% off . . . if you pay by March
> 31st."  Or we are "currently able to offer you a substantial discount of 50% off your
> Current Balance if we receive payment by 05-14-2004 " (emphases in original).  There
> is nothing improper about making a settlement offer.  The concern is that
> unsophisticated consumers may think that if they don't pay by the deadline, they will
> have no further chance to settle their debt for less than the full amount; for the offers
> are in the idiom of limited-time or one-time sales offers, clearance sales,
> going-out-of-business sales, and other temporary discounts.  In fact debt collectors,
> who naturally are averse to instituting actual collection proceedings for the often very
> modest sums involved in the consumer debt collection business, frequently renew
> their offers if the consumer fails to accept the initial offer.
>
> The objection to allowing liability to be based on such offers is that the settlement
> process would disintegrate if the debt collector had to disclose the consequences of
> the consumer's rejecting his initial offer.  If he has to say, "We'll give you 50 percent
> if you pay us by May 14, but if you don't, we'll probably offer you the same or even
> better deal later, and if you refuse that, we'll probably give up and you'll never have
> to pay a cent of the debt you owe," there will be no point in making offers.  As in

---

[1]  The Court does not share Plaintiff's concern that "given that the operative facts of
DeGeorge and the present case are identical, accepting Defendant's present argument would
result in an irreconcilable conflict within the Eastern District of Pennsylvania in relation to
interpretation of Section 1692e of the FDCPA."  (Pl.'s Resp. Opp'n Mot. Dismiss 10 n.17.)
Aside from the obvious point that the facts of the two cases are not identical, it is common and
appropriate judicial practice for judges in the same court to reasonably disagree on an unsettled
point of law.

previous cases in which we have created safe-harbor language for use in cases under the Fair Debt Collection Practices Act, see Veach v. Sheeks, 316 F.3d 690, 693–94 (7th Cir. 2003); Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C., 214 F.3d 872, 876 (7th Cir. 2000); Bartlett v. Heibl, 128 F.3d 497 (7th Cir. 1997); cf. Diaz v. Prudential Ins. Co. of America, 424 F.3d 635, 637 (7th Cir. 2005); Herzberger v. Standard Ins. Co., 205 F.3d 327, 331 (7th Cir. 2000), we think the present concern can be adequately addressed yet the unsophisticated consumer still be protected against receiving a false impression of his options by the debt collector's including with the offer the following language: "We are not obligated to renew this offer." The word "obligated" is strong and even the unsophisticated consumer will realize that there is a renewal possibility but that it is not assured.

Evory, 505 F.3d at 775–76.

Applying that reasoning to the present case, the letter at issue is clearly not violative of the FDCPA.  Defendant offered Plaintiff an opportunity to settle his debt, a practice consistent with the purposes of the FDCPA.  It indicated that it was doing so in connection with tax season, suggesting that this was perhaps a time when many individuals have an influx of money from the receipt of tax refunds.  Moreover, Defendant stated that it was not obligated to renew the offer, clearly indicating that there was a renewal possibility, but that the possibility was not assured. Finally, it set deadlines for submission of payments in connection with that offer, thereby avoiding the problem identified by Judge Posner of causing the settlement process to disintegrate in the absence of any potential consequences for failing to accept the settlement offer within a reasonable period of time.  Nothing in the letter stated that failure to accept this offer within the deadline meant that no further offers would be coming, or that Defendant would commence a lawsuit if payment was not received.  Indeed, the letter made no implication of any negative repercussions whatsoever.  See King v. Arrow Fin. Servs., LLC, No. Civ.A.02-867, 2003 WL 21780973, at *3 (E.D. Pa. July 31, 2003) ("The inclusion of a deadline for acceptance of the settlement is merely a term of the settlement offer, and the least sophisticated consumer would

13

interpret it as such.  Put differently, the March letter does not contain any language that could be

understood by the least sophisticated consumer—absent some tortured and idiosyncratic

reading—that would be taken as threatening, deceptive, or misleading."); <u>Kiliszek v. Nelson,</u>

<u>Watson, & Assocs., LLC</u>, No. Civ.A.04-2604, 2006 WL 335788, at *7 (M.D. Pa. Feb. 14, 2006)

("We agree that Nelson's inclusion of a deadline in the May 2004 settlement offer did not imply

that the offer was a one-time only offer.  Nelson's letter . . . did not imply that it would never

again make a similar offer, it merely provided an expiration date for the specific offer in the

letter.").   Finding nothing false or misleading in the letter challenged by Plaintiff, the Court must

dismiss this portion of Plaintiff's FDCPA claim.

### 3.        Practice of Mailing Collection Letters Five Days After the Letters Are Dated

The last basis asserted by Plaintiff for liability under Section 1692e is Defendant's alleged

practice of mailing collection letters days after the date indicated on the letter.  Specifically,

Plaintiff asserts that "[t]he late mailing date, in relation to the date of the letter of April 4, 2014,

further caused confusion and created a false sense of urgency, as the letter indicated that the first

payment had to be made by April 25, 2014, effectively shortening the time Plaintiff had to accept

the offer at issue. . . .   In this regard, the late mailing of the correspondence at issue appears to be a

deliberate action and/or debt collection tool by Defendant, designed to accentuate a false sense of

urgency, because, upon receipt of the letter consumer is immediately given less time to respond to

the offer than what the offer itself allows."  (Am. Compl. ¶¶ 42–43.)  In his Response to

Defendant's Motion to Dismiss, Plaintiff reasons that "although Defendant's letter, which is dated

April 4, 2014, offers to resolve a debt if the initial payment is received by April 25, 2014, this 21-

14

day period is artificially shortened by Defendant's practice of waiting five days— without any reasonable basis or explanation—to send out the letter at issue." (Pl.'s Resp. Opp'n Mot. Dismiss 11.) He goes on to analogize this conduct to the FDCPA's validation notice requirement, where the thirty-day period is triggered by receipt of the letter, meaning that a consumer always has thirty days—regardless of when the letter is mailed—to dispute the letter. Ultimately, Plaintiff concludes that decisions addressing the timing of the validation notice make clear that any attempt to shorten or overshadow a communicated deadline violates the FDCPA.

Plaintiff's argument is incorrect on multiple levels. Primarily, Plaintiff's citation to cases addressing the FDCPA's validation notice requirements is misplaced. According to Section 1692g(a)(3), a debt collection notice submitted under the Act must include "a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector."[2] Graziano v. Harrison, 950 F.2d 107, 111–12 (3d Cir. 1991) (quoting 15 U.S.C. § 1692g(a)(3)). Contrary to Plaintiff's argument, nothing in this section or the interpretative jurisprudence says what Plaintiff suggests—that "any attempt to shorten (or even overshadow) a communicated deadline violates the FDCPA." (Pl.'s Resp. Opp'n Mot. Dismiss. 12.) Rather, Section 1692g(a)(3) addresses only the timing with respect to the required validation notice. Accordingly, Plaintiff cannot properly analogize that section in order to proclaim that Defendant's letter was false and misleading due to its late mailing.

Moreover, the Court finds that the Defendant's practice of mailing its collection letters five days after they were dated does not, in and of itself, create any false sense of urgency or result

---

[2] In the present case, that notice was given in the Defendant's February 28, 2014 letter.

in any confusion.  As noted above, "[t]he inclusion of a deadline for acceptance of the settlement is merely a term of the settlement offer."  King, 2003 WL 2170973, at *3.  The Third Circuit has expressly found that a settlement offer that requires "immediate" payment is not misleading and cannot alone violate the FDCPA.  See Quadramed, 225 F.3d 356 (3d Cir. 2000).  Nor does such a statement, included in the same letter as the thirty-day validation notice, overshadow that notice or otherwise mislead the least sophisticated debtor.  Id.; see also D'Addario v. Enhanced Recovery Co., LLC, 798 F. Supp. 2d 570, 574 (D.N.J. 2011).  In other words, nothing in the FDCPA requires that creditors give debtors any set period of time in which to accept settlement offers.  In turn, it follows that Defendant's settlement offer requiring payment by a date certain—whether that date be twenty-one days after receipt of the letter or sixteen days after receipt of the letter—cannot be said to false or misleading.   Therefore, the Court must dismiss Plaintiff's claim under Section 1697e.

### 4.    Claim Under Section 1692f

Under 15 U.S.C. § 1692f, "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt."  15 U.S.C. § 1692f.  "A complaint fails to state a claim under Section 1692f unless it identifies some misconduct by the debt collector other than that which provides the basis for the plaintiff's claims under other provisions of the FDCPA."  Hoover v. Midland Credit Mgmt., Inc., No. Civ.A.10-6856, 2012 WL 1080117, at *8 (E.D. Pa. Mar. 30, 2012); see also Corson v. Accounts Receivable Mgmt., Inc., No. Civ.A.13-1903, 2013 WL 4047577, at *7 (D.N.J. Aug. 9, 2013).

Plaintiff's Amended Complaint fails to meet this requirement.  After citing to Section 1692f, the Amended Complaint simply states that "[a]s described herein, Defendant's actions

16

violated the applicable provisions of the FDCPA;" "Defendant's conduct, as alleged herein, is (and was) deliberate, intentional, reckless, willful, and wanton;" and "Defendant's conduct, as alleged herein, is unfair, misleading, deceptive and unconscionable." (Am. Compl. ¶¶ 45–48.) At no point does the Amended Complaint identify any misconduct by Defendant—other than that which provides the basis for the Section 1692e claim—that could constitute the foundation for a Section 1692f claim. In his Response, Plaintiff does not even address Defendant's Motion as to this claim, let alone attempt to identify the conduct upon which it relies. As such, the Court shall dismiss this claim.

### 5.    Conclusion as to Defendant's Motion to Dismiss

In sum, the Amended Complaint at issue fails to state a plausible claim for relief under the FDCPA. With respect to his claim under 15 U.S.C. § 1692e, Plaintiff does not allege any conduct by Defendant that is false, deceptive, or misleading as a matter of law. With respect to his claim under 15 U.S.C. § 1692f, Plaintiff fails to identify any conduct by Defendant that is not otherwise covered by his Section 1692e claim. As such, Defendant's Motion must be granted in its entirety and Plaintiff's Amended Complaint shall be dismissed with prejudice.

## III.   MOTION FOR LEAVE TO AMEND

### A.    Standard of Review

Federal Rule of Civil Procedure 15(a) sets forth the standard for granting leave to amend a pleading when, as is the case here, a responsive pleading has been served: "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a). The Rule clearly states that "[t]he court should freely give leave when justice so requires." Id. Nonetheless, the policy favoring liberal amendments is not "unbounded." Dole v. Arco

<u>Chem. Co.</u>, 921 F.2d 484, 487 (3d Cir. 1990).  The decision whether to grant or to deny a motion

for leave to amend rests within the sound discretion of the district court.  <u>Foman v. Davis</u>, 371

U.S. 178, 182 (1962); <u>Waterfront Renaissance Assoc. v. Phila.</u>, 701 F. Supp. 2d 633, 639 (E.D.

Pa. 2010).  A district court may deny leave to amend a complaint where "it is apparent from the

record that (1) the moving party has demonstrated undue delay, bad faith or dilatory motives, (2)

the amendment would be futile, or (3) the amendment would prejudice the other party."  <u>Lake v.

Arnold</u>, 232 F.3d 360, 373 (3d Cir. 2000) (citing <u>Foman</u>, 371 U.S. at 182).

      **B.**    **<u>Discussion</u>**

    In the present case, Plaintiff seeks to file a Second Amended Complaint that repleads the

claims discussed above, and also includes a new claim based on the recently issued Third Circuit

opinion in <u>Douglass, et al. v. Convergent Outsourcing</u>, 765 F.3d 299 (3d Cir. Aug. 28, 2014)—a

decision issued after both the Amended Complaint and the foregoing Motion to Dismiss were

filed.  In <u>Douglass</u>, the plaintiff received a debt collection letter from the defendant regarding the

collection of a debt that the plaintiff allegedly owed.  <u>Id.</u> at 300. Visible on the face of the letter,

above the plaintiff's name and address, was a sequence of numbers representing the plaintiff's

account number with the defendant debt collector.  <u>Id.</u> at 300–01.  The number did not refer or

relate to her account with the creditor.  <u>Id.</u> at 300.  The defendant mailed the letter in an envelope

with a glassine window, which allowed the plaintiff's account number, name, address, Postal

Service bar code, and quick response code to be visible.  <u>Id.</u> at 300–01.  The quick response code,

when scanned by a device such as a smart phone, revealed the same information as that displayed

through the glassine window, as well as a monetary amount corresponding to the plaintiff's

alleged debt.  <u>Id.</u> at 301.  The plaintiff brought a claim alleging that this violated § 1692f(8) of the

FDCPA, which prohibits "using any language or symbol" other than a debt collector's name and

address on an envelope.  Id. at 301 (quoting 15 U.S.C. § 1692f(8)).  Following the District Court's

grant of summary judgment in favor of the defendant, the Third Circuit reversed, holding:

> [The defendant] insists that [the plaintiff's] account number is a meaningless string
> of numbers and letters, and its disclosure has not harmed and could not possibly harm
> [the plaintiff].   But the account number is not meaningless—it is a piece of
> information capable of identifying [the plaintiff] as a debtor.  And its disclosure has
> the potential to cause harm to a consumer that the FDCPA was enacted to address.
> As we have stated before, the FDCPA "must be broadly construed in order to give full
> effect to [Congress's remedial] purposes."  Caprio, 709 F.3d at 148.  Construing §
> 1692f(8) in accord with the FDCPA's purposes in § 1692(a), we find the statute not
> only proscribes potentially harassing and embarrassing language, but also protects
> consumers' identifying information.  Accordingly, [the plaintiff's]  account number
> is impermissible language or symbols under § 1692f(8).

Id. at 305–06.

Plaintiff's proposed Second Amended Complaint now seeks to add a claim virtually

identical to the one at issue in Douglass.  The proposed Second Amended Complaint alleges the

following: the February 28, 2014 letter from Defendant "was sent in a 'glassine window' envelope

and the sequence 'F19943497-02/281N' was clearly visible through this window," (Pl.'s Mot. for

Leave to File Second Am. Compl., Ex. C ¶ 22); "[t]he letter further identifies the sequence

'F19943497' as Plaintiff's 'NORTHLAND ACCOUNT NUMBER,'" (id. ¶ 23); the April 2014

letter from Defendant "was sent in a 'glassine window' envelope and the sequence 'F19943497-

04/04x33' was clearly visible through this window," (id. ¶ 27), and "[t]he letter further identifies

the sequence 'F19943497' as Plaintiff's 'NORTHLAND ACCOUNT NUMBER.'" (Id. ¶ 28.)  The

proposed Second Amended Complaint goes on to assert:

> 51.     Section 1692(f)(8) specifically prohibits "[u]sing any language or symbol,
> other than the debt collector's address, on any envelope when communicating
> with a consumer."

52.     The disclosure of Plaintiff's account number on the face of the envelope violated Section 1692(f)(8). See Douglass, et al. v. Convergent Outsourcing, __ F.3d __, 2014 WL 4235570 (3d Cir., August 28, 2014).

(Id. ¶¶ 51–52.)

In response to this Motion for Leave to File an Amended Complaint, Defendant does not argue that it would suffer any prejudice from the amendment.  Similarly, Defendant does not assert that Plaintiff has demonstrated undue delay, bad faith, or dilatory motives by seeking to amend, particularly in light of the Third Circuit's very recent pronouncement on this issue. Finally, Defendant does not contend that the proposed additions to the Second Amended Complaint are futile.[3]   Rather, Defendant asserts that two of the three claims in Plaintiff's proposed Second Amended Complaint are taken verbatim from the First Amended Complaint and that these claims are futile for the reasons set forth in its Motion to Dismiss.  Accordingly, it contends that the proposed Second Amended Complaint cannot be filed as is, and that the Court should deny Plaintiff's Motion.

The Court agrees with Defendant in part and disagrees in part.  As set forth in great detail above, Plaintiff's claims under 15 U.S.C. § 1692e and 15 U.S.C. § 1692f—both of which are repeated in the proposed Second Amended Complaint—are indeed legally deficient and, in turn, futile.  Thus, the Court cannot accept the proposed Second Amended Complaint that Plaintiff attaches as Exhibit C to his Motion for Leave to Amend.  Nonetheless, Plaintiff's new proposed claim, to be brought pursuant to 15 U.S.C. § 1692f(8), is indeed viable given the Third Circuit's pronouncement in Douglass.  As such, the Court will grant Plaintiff's Motion for Leave to File

---

[3]  Defendant asserts that Douglass is the subject of a petition for rehearing *en banc*, filed on September 10, 2014.  Notably, on September 22, 2014—after the date of Defendant's brief—the Third Circuit denied the appellee's petition for rehearing.

and give Plaintiff fourteen days in which to file a Second Amended Complaint that eliminates all allegations related to his failed claims under §§ 1692e and 1692f, and sets forth only allegations relating to his new claim under § 1692f(8) and the Third Circuit's ruling in <u>Douglass</u>.

      An appropriate Order follows.